**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **ELIZABETH HAAVIK** | ) | |
| **MORREIM, J.D., Ph.D.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 12-2891-STA-dkv** |
| | ) | |
| **THE UNIVERSITY OF TENNESSEE;** | ) | |
| **THE UNIVERSITY OF TENNESSEE** | ) | |
| **HEALTH SCIENCE CENTER;** | ) | |
| **THE UNIVERSITY OF TENNESSEE** | ) | |
| **COLLEGE OF MEDICINE; GUY** | ) | |
| **REED, M.D. (Individually and in his** | ) | |
| **Official Capacity); POLLY** | ) | |
| **HOFFMAN, Ph.D., (Individually and in** | ) | |
| **her Official Capacity); DAVID** | ) | |
| **STERN, M.D., (Individually and in his** | ) | |
| **Official Capacity); CHERYL** | ) | |
| **SCHEID, Ph.D., (Individually and in** | ) | |
| **her Official Capacity); STEVE** | ) | |
| **SCHWAB, M.D. (Individually and in his** | ) | |
| **Official Capacity), JOSEPH** | ) | |
| **DiPIETRO, D.V.M, M.S. (Individually** | ) | |
| **and in his Official Capacity),** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Before the Court is Defendants' Motion to Dismiss for Lack of Subject Jurisdiction and for

Failure to State a Claim (D.E. # 32) filed on March 4, 2013. The Court previously granted Plaintiff

Elizabeth Haavik Morreim, J.D., Ph.D. a two-month extension of time in which to respond to

Defendants' Motion while the parties pursued settlement negotiations. Plaintiff responded in

1

opposition (D.E. # 38) on May 30, 2013, and Defendants have filed a reply brief (D.E. # 43). Defendants' Motion is now ready for disposition.  For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

**I. The Amended Complaint**

For purposes of Defendants' Rule 12(b) Motion, the Court accepts as true the following factual allegations from Plaintiff' Amended Complaint (D.E. # 22).  Plaintiff was at all relevant times employed by the University of Tennessee ("UT")[1] as a tenured, full professor and member of the faculty in good standing. (Am. Compl. ¶ 1.) Dr. Morreim joined the UT faculty on July 1, 1984. (*Id.* ¶ 13.)  Dr. Morreim's fields of teaching and scholarship are philosophical bioethics and health law.  (*Id.* ¶ 14.)  Dr. Morreim was hired, tenured, and promoted to teach primarily in the Department of Pediatrics with additional participation in the Department of Internal Medicine and other departments throughout UT.  (*Id.* ¶ 15.)  Over the twenty-eight (28) years of Dr. Morreim's service to UT, she has provided teaching services for such departments as Pediatrics, Internal Medicine, Orthopedics, Pathology, Psychiatry, Preventive Medicine, and Surgery.  (*Id.* ¶ 16.)

Dr. Morreim was awarded tenure at UT, effective July 1, 1990, in the (then-existing) Department of Human Values and Ethics ("HVE").  (*Id.* ¶ 17.)  The award of tenure protects "base salary" at UT, (Faculty Handbook § 4.7.2(4)); "base" salary is distinguished from supplemental

---

[1] The University of Tennessee, the University of Tennessee Health Science Center, and the University of Tennessee College of Medicine are all named as Defendants in this action.  For the sake of clarity and simplicity, the Court will refer to these parties collectively as "UT."

compensation such as pay for directing a program.  (*Id.* ¶ 18.)[2]  By implication, so long as a faculty member is tenured at UT, the institution must pay the entire amount of that faculty member's base salary. (*Id.* ¶ 19.)  One hundred percent (100%) of Dr. Morreim's salary is base salary; therefore, UT is obligated to pay 100% of Dr. Morreim's salary, so long as she is tenured.  (*Id.* ¶ 20.)  Dr. Morreim was promoted to (full) Professor at UT, effective July 1, 1993, in the (then-existing) Department of HVE.  (*Id.* ¶ 21.)

For twenty-four (24) consecutive years, Dr. Morreim's annual evaluations were "outstanding" or "exceeds expectations," the highest possible rating under UT's evaluation system. (*Id.* ¶ 22.)  Dr. Morreim has been, and continues to be, a highly effective teacher and scholar, authoring two books and over 140 book chapters and articles in journals of law, medicine, and bioethics.  (*Id.* ¶ 23.) Dr. Morreim's legal scholarship has been cited by numerous courts, including state supreme courts and various federal courts.  (*Id.* ¶ 24.)  Her works have been cited in numerous appellate briefs, including briefs to the Supreme Court of the United States.  (*Id.*)

## A. Reassignment to the Department of Internal Medicine

In February 2009, Dr. Steve Schwab who was then Dean at UT proposed to the UT Board of Trustees that the entire Department of HVE be discontinued, stating to the Trustees that the Department had "minimal funded research programs" and "limited teaching of medical students," and that the long-term effects of eliminating the ethics department were "anticipated to be minimal." (*Id.* ¶ 25.)  In a May 2009 meeting, Dr. Schwab informed members of the Department of HVE that

---

[2] Plaintiff's allegations about tenure and the legal effect of a faculty member receiving tenure are arguably conclusions of law in this case.  The Court simply recites these allegations here to provide a complete and accurate rendition of Plaintiff's claim for relief in the Amended Complaint.

in a "consolidation" move, the Department would be dissolved and its members would be placed in the Department of Internal Medicine, chaired by Dr. Guy Reed. (*Id.* ¶ 26.) In the same May 2009 meeting, upon direct questioning by Dr. Terry Ackerman, who was serving as the chair of the Department of HVE, Dr. Schwab assured HVE members that they could continue to provide teaching services throughout the UT College of Medicine. (*Id.* ¶ 27.) In the transition from HVE into Internal Medicine, UT preserved the HVE department's financial code—E07-3985; financially, the three (3) members of HVE thus remain a "unit" within UT, much like a division within a department. (*Id.* ¶ 28.)

On July 31, 2009, Dr. Morreim met with Dr. Reed at his request and in the presence of Dr. Polly Hofmann, the associate dean, to discuss goals for the forthcoming academic year. (*Id.* ¶ 29.) Dr. Reed demanded that Dr. Morreim find a way to pay for at least 25% of her base salary at UT through extramural grants or other consulting activity. (*Id.*) Dr. Morreim advised Dr. Reed that this expectation was not appropriate because (a) grant money was virtually nonexistent for her scholarly fields, and more importantly, (b) since 100% of Dr. Morreim's salary is base salary, UT could not require Dr. Morreim to seek other sources to pay the salary that UT alone owed her. (*Id.* ¶ 30.) Although Dr. Morreim maintains that, as a tenured full professor, she is under no obligation whatsoever to secure outside salary support, during a meeting with Dr. Reed on October 26, 2009, she nevertheless offered several ideas that could potentially lead to outside salary support. (*Id.* ¶ 33.) All of these suggestions were flatly rejected by Dr. Reed. (*Id.*)

Dr. Morreim additionally advised Dr. Reed (and subsequently other administrators) that the putative grant funding for "bioethics" research is almost entirely for social science research. (*Id.* ¶ 31.) A brief, unusual exception appeared in 2009, as part of the ARRA federal stimulus funding,

4

which went to approximately 4 or 5 areas of philosophical bioethics research; however, none of those grant-funded research topics fell within Dr. Morreim's areas of expertise and research focus. (*Id.*)  To further support the fact that grant money in her field was virtually nonexistent, Dr. Morreim provided three (3) letters for UT administrators in 2011, attesting that research grant funding was almost completely nonexistent for scholarly legal research and for philosophical bioethics research and that it would be entirely inappropriate to demand that faculty in these fields find outside funds to pay their own salaries. (*Id.* ¶ 32.)  These letters came from (a) the Dean of the UT School of Law, (b) the Dean of the University of Memphis School of Law, and (c) the head of the UT philosophy department. (*Id.*)

**B.  Dr. Morreim's First "Unsatisfactory" Annual Evaluation**

During these initial meetings in July and October 2009 and in subsequent meetings, Dr. Reed also identified teaching expectations that would have effectively precluded Dr. Morreim from continuing her extensive teaching activities in the Department of Pediatrics—the department for which she had been hired, tenured, and promoted to offer her primary teaching services. (*Id.* ¶ 34.) On October 14, 2010, Dr. Reed issued to Dr. Morreim an "unsatisfactory" evaluation for the 2009-2010 academic year, based solely on his own unilaterally-issued and largely unlawful demands rather than on "agreed-upon," "mutually established" goals required by the Faculty Handbook. (*Id.* ¶ 35.) Dr. Reed's evaluation also included a remediation plan developed solely and unilaterally by Dr. Reed. (*Id.*)  His remediation plan, which was identical to his previous list of demands, ran directly contrary to Faculty Handbook § 4.16.3, which states that the "the Chair *and the tenured faculty member* must develop a written plan" of remediation. (*Id.*) (emphasis in original).

On October 29, 2010, Dr. Morreim initiated a grievance appeal of her first "unsatisfactory"

rating, presenting the appeal in accordance with Faculty Handbook § 7.2 to Dr. J. Lacey Smith, who served as the Interim Dean at that time.  (*Id.* ¶ 36.)  On December 2, 2010, Dr. Smith upheld the negative evaluation without explanation, purportedly because he was waiting on legal advice from "our legal folks."  (*Id.*)  On December 7, 2010, Dr. Morreim sent her appeal to Dr. Cheryl Scheid, Vice-Chancellor for Academic Affairs, per Faculty Handbook § 7.2.  (*Id.* ¶ 37.)  On January 11, 2011, Dr. Scheid denied the appeal based largely on recitals regarding the department chair's authority to assign faculty workloads under Faculty Handbook § 4.4.1.  (*Id.*)  Contrary to Dr. Scheid's reasoning, nowhere does the Faculty Handbook permit "work/workload assignment" to figure into a Chair's annual evaluation.  (*Id.*)

On January 26, 2011, Dr. Morreim sent the grievance appeal to Chancellor Dr. Schwab.  (*Id.* ¶ 38.)  He responded on March 1, 2011, stating that "[o]verturning a chair's evaluation requires a compelling procedural or factual discrepancy" and finding no such compelling reason in Dr. Morreim's case.  (*Id.*)  On March 11, 2011, Dr. Morreim appealed to UT President Joseph DiPietro in Knoxville, Tennessee.  (*Id.* ¶ 39.)  Six and a half months later, on September 29, 2011, Dr. DiPietro declined to overturn the negative evaluation.  (*Id.*)  He cited a sentence-fragment from the definition of "unsatisfactory" in the Faculty Handbook § 8.2(1)(b): "failure to perform satisfactorily the duties or responsibilities of the faculty position" – and stated that this "makes no reference to mutually established goals."  (*Id.*)  He further cited the department chair's authority to make work assignments and assign effort allocation.  (*Id.*)

## C. Dr. Morreim's Second "Unsatisfactory" Annual Evaluation

After a second annual meeting with Plaintiff on August 11, 2011, Dr. Guy Reed issued Dr. Morreim an "unsatisfactory" evaluation dated August 19, 2011 for the 2010-2011 academic year.

6

(*Id.* ¶ 40.)  Just as before, the evaluation was based solely on Dr. Reed's unilaterally-issued and largely unlawful demands rather than on the "agreed-upon," "mutually established" goals required by the Faculty Handbook.  (*Id.*)  Dr. Reed also based the evaluation on a review of scholarship dating back to 2007, contrary to Handbook requirements that each evaluation focus exclusively on the specific year at hand.  (*Id.*)  Dr. Reed's evaluation again included a remediation plan developed solely and unilaterally by Dr. Reed.  (*Id.*)  The remediation plan was identical to Dr. Reed's previous list of demands and was again issued in direct contravention to Faculty Handbook § 4.16.3, which states that the "the Chair *and the tenured faculty member* must develop a written plan" of remediation (emphasis added).  (*Id.*)

According to the pleadings, Dr. Reed's second "unsatisfactory" evaluation also contained incorrect factual assertions.  (*Id.* ¶ 41.)  For instance, it stated that a "review of PubMed shows 1 paper (Am J Bioeth) since 2008" and "only 2 papers" in the "Web of Knowledge" database since 2007.  (*Id.*)  He added that Web of Knowledge is "a citation database with multi-disciplinary coverage of over 10,000 high-impact journals in the sciences, social sciences, and arts and humanities."  (*Id.*)  However, in fact, (a) PubMed (an exclusively medicine/science-focused database) shows three (3) Morreim publications after 2008, not just one (1), and five (5) Morreim publications from 2008 and later (not counting a 2012 publication that would not have shown in 2011); (b) Web of Knowledge's "Arts and Humanities" journal list is comprised almost exclusively of science journals; and, (c) in any case, it is inappropriate to evaluate the quality and quantity of scholarship in health law and philosophical bioethics according to whether the author's work appears in science databases such as PubMed and Web of Knowledge.  (*Id.*)

On September 6, 2011, Dr. Morreim appealed the second "unsatisfactory" evaluation to

(recently installed) Dean Dr. David Stern.  (*Id.* ¶ 43.)  He failed to respond within the 30-day period required under Faculty Handbook § 7.2.  (*Id.*)  Belatedly and following Dr. Morreim's next-step appeal to Dr. Scheid, Dr. Stern sent an email on October 18, 2011, stating that he would have denied the appeal and citing Dr. DiPietro's letter of September 29, 2011.  (*Id.*)  On October 11, 2011, Dr. Morreim appealed the second "unsatisfactory" evaluation to Dr. Scheid.  (*Id.* ¶ 44.)

**D.  The Cumulative Performance Review**

In October 2011, after two (2) "unsatisfactory" evaluations within a five-year period and pursuant to Faculty Handbook § 4.16.4, Dean Dr. Stern convened a "Cumulative Performance Review" (CPR) committee.  (*Id.* ¶ 45.)  Per Faculty Handbook § 4.16.4, a CPR committee is required to undertake a "comprehensive, formal, cumulative performance review" to determine whether or not a faculty member "satisfies" or "fails to satisfy expectations for rank."  (*Id.* ¶ 46.) For the rank of Professor, the CPR committee is instructed to use the expectations for rank provided in Faculty Handbook § 6.1.4.  (*Id.*)  In her communication to the committee at the outset of its deliberations, Dr. Hofmann expressly charged its members with following these specific Handbook provisions.  (*Id.*)

During the process of convening the CPR committee, Dr. Stern attempted improperly to influence the committee's composition and thereby its outcome, first by vetoing a Faculty Senate nominee—a J.D./M.D. who, as the only other J.D.-degreed professor in the College of Medicine, was uniquely qualified to properly evaluate Dr. Morreim's legal scholarship—and additionally by attempting to insert a basic science Ph.D. professor who had no expertise whatsoever in either legal scholarship or in philosophical bioethics.  (*Id.* ¶ 47.)  In a meeting and in a document provided to Dr. Stern on October 18, 2011, Dr. Morreim requested that the CPR committee be constituted

8

properly in accordance with Faculty Handbook § 4.16.4.  (*Id.* ¶ 48.)  He subsequently withdrew his insertion of the basic science Ph.D. professor but maintained his veto of the J.D./M.D. member.  (*Id.*)

During a meeting with Dr. Scheid on November 3, 2011, regarding the appeal of her second "unsatisfactory" evaluation, Dr. Morreim and Dr. Scheid mutually agreed to suspend the appeal, pending the report of the CPR committee.  (*Id.* ¶ 49.)  Notwithstanding Dr. Stern's attempts to manipulate the CPR committee's membership and thereby influence its findings, the CPR committee relayed to Dr. Stern on January 17, 2012, its unanimous and unequivocal finding that Dr. Morreim "satisfies expectations for rank" in every respect.  (*Id.* ¶ 50.)  At no point did UT, its administrators, or officers inform Dr. Morreim about the uniformly favorable findings of the CPR committee.  (*Id.* ¶ 51.)  Dr. Morreim did not learn about the findings until seven (7) months later on August 9, 2012, when she inspected her personnel files at the office of Dr. Scheid.  (*Id.*)

With full knowledge that the CPR committee unanimously found that Dr. Morreim satisfied all expectations for rank, Dr. Stern directed Dr. Scheid on May 24, 2012, to initiate proceedings to revoke Dr. Morreim's tenure, stating that his primary concern was to enforce the "authority of the Chair."  (*Id.* ¶ 52.)  Dr. Morreim did not learn of this directive until months later, and only because she had taken the initiative to inspect her own personnel file on August 9, 2012.  (*Id.*)  Although the CPR committee correctly focused on Dr. Morreim's "cumulative," "comprehensive" performance as required by Faculty Handbook § 4.16.4 and § 6.1.4, and as captured in the express charge given to them by Dr. Hofmann, Dr. Stern ignored the CPR committee's findings because in his opinion the committee should have focused solely on Dr. Reed's demands and findings during the two years of Dr. Morreim's membership in the Internal Medicine Department.  (*Id.* ¶ 53.)  In other words, Dr. Stern criticized the CPR committee for adhering to handbook requirements instead of following Dr.

Stern's preference and violating handbook requirements to accomplish his objective.  (*Id.*)

At a meeting on August 17, 2012, and in a follow-up letter dated August 21, 2012, Dr. Morreim asked Dr. Scheid to reactivate the October 11, 2011, grievance appeal for the second "unsatisfactory" rating that, by mutual agreement, had been "on the shelf" since their meeting of November 3, 2011, pending the report of the CPR committee. (*Id.* ¶ 54.) Although Dr. Scheid could have used the CPR committee's favorable finding as an opportunity to overturn that negative evaluation as early as January 2012—thereby preempting Dr. Stern's May 25, 2012 decision to seek tenure revocation—she chose not to do so.  (*Id.*)  Following Dr. Morreim's August 21, 2012 letter, which clearly pointed out the unlawful demands and false statements in Dr. Reed's second evaluation, Dr. Scheid again chose, this time by prolonged silence, not to overturn the "unsatisfactory" rating. (*Id.*)

**D. Dr. Strong's 2011 Raise**

Effective July 1, 2011, Dr. Carson Strong, Plaintiff's colleague from the former Department of HVE, received a salary increase of $15,242, to reach a total salary of $120,078. (*Id.* ¶ 42.) Dr. Strong's activities and accomplishments were equal to and no greater than Dr. Morreim's activities and accomplishments during the 2010-2011 year and previously. (*Id.*) Dr. Morreim received only UT's system-wide 3% salary increase, compared to Dr. Strong's nearly 15% increase. (*Id.*)

**E. Plaintiff's Causes of Action**

According to the Amended Complaint, UT and its officers and administrators have made it clear that they intend to revoke Dr. Morreim's tenure. (*Id.* ¶ 55.) Defendants plan to revoke her tenure, take her job, and thereby take her property without due process. (*Id.*) Plaintiff alleges that these are ongoing violations of federal statutory and federal constitutional laws and that these federal

statutory and federal constitutional rights are clearly established and are known by reasonable persons. (*Id.*) According to the Amended Complaint, from October 2009 on, Dr. Morreim expressly and directly informed each and every individual Defendant regarding the potential 14th Amendment implications of their conduct in this matter. (*Id.*) Dr. Morreim first informed Drs. Reed and Hofmann on October 26, 2009, via a one-page summary explaining that tenure is property, that UT officials are state actors, and that the Faculty Handbook is designed to protect due process rights in this setting. (*Id.*) She provided the same one-page handout to both parties on subsequent occasions and likewise provided this same information in every letter of grievance appeal to each and every other individual Defendant. Thus, all individual Defendants have been made personally and specifically aware of the potential constitutional implications of their conduct. (*Id.*)

Given that Dr. Stern clearly seeks to revoke Dr. Morreim's tenure, the Faculty Handbook requires additional steps such as seeking a vote from tenured faculty in the relevant department, a Faculty Senate Grievance Committee proceeding, and a Faculty Senate Tribunal. (*Id.* ¶ 56.) However, all these additional procedures, like the CPR committee, are purely advisory, *see* Faculty Handbook 8.3.1(2); 8.3.1(5)(b); 8.3.1(10). (*Id.*) Thus, UT's internal hearing procedures are inherently defective as they afford no effective mechanism for protecting the substantive and procedural due process rights of Dr. Morreim. (*Id.*) According to the Amended Complaint, given that Dr. Stern has already chosen to ignore the CPR findings and that he and all Defendants have chosen to ignore Faculty Handbook requirements at numerous junctures, it is highly unlikely that faculty votes would influence or dissuade him or the other officials from engaging in unlawful acts. (*Id.*) According to Plaintiff then, Defendants have already evidenced an ongoing intent to violate her federal statutory and federal constitutional rights, and the procedural protections in place at UT,

as administered, are a "sham," as they do not provide the level of protection mandated by the United States Constitution. (*Id.*)

UT, its administration, and officers have made it clear that they are determined to remove Dr. Morreim's tenure by any means necessary. (*Id.* ¶ 57.) They have insisted that the "authority of the Chair" takes precedence over all else—notwithstanding clear evidence that Dr. Reed's demands are unlawful and inappropriate and that his evaluations are peppered with false statements. (*Id.*) Upon information and belief, UT administrators have also decided to effect an alternative strategy to ensure that Dr. Morreim is stripped of tenure without due process. (*Id.* ¶ 58.) Instead of attempting to prove, by clear and convincing evidence, that Dr. Morreim's performance is so poor that "just cause" supports revoking tenure, they apparently plan a far simpler, more devious alternative route toward their determined goal. (*Id.*) According to the Amended Complaint, at or about the time Dr. Carson Strong is to retire in December 2012, the "unit" of which Dr. Morreim is a member, will quite likely be "discontinued" per Faculty Handbook Appendix I. (*Id.*) In other words, if the Defendants fail in their efforts to strip Dr. Morreim of tenure based upon "just cause," or if they simply embrace an easier course of action requiring fewer procedural steps, Defendants now plan a subterfuge and pretext of dismantling the "unit" to achieve the same end of terminating Dr. Morreim. (*Id.*)

Based on these fact pleadings, the Amended Complaint alleges that Defendants are liable for violations of Plaintiff's constitutional rights under 42 U.S.C. § 1983, specifically Plaintiff's constitutional property interest in her tenured position with UT, her procedural due process rights, her substantive due process rights, her equal protection rights, and her First Amendment free speech rights. Plaintiff seeks prospective injunctive relief, declaratory relief, and money damages under

§ 1983.  Plaintiff further alleges that Defendants have discriminated against her on the basis of her

sex in violation of the Tennessee Human Rights Act ("THRA").  Finally, the Amended Complaint

alleges counts under state law for defamation, breach of contract, breach of the covenant of good

faith and fair dealing, unlawful inducement to breach contract, and tortious interference with

contract.

## II. Defendants' Motion to Dismiss

In their Motion to Dismiss, Defendants seeks dismissal of all of Plaintiff's claims for lack

of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and

for failure to state a claim pursuant to Rule 12(b)(6).  First, Defendants contend that Plaintiff's

federal claims for violations of her constitutional rights are not ripe.  Plaintiff has merely alleged that

Defendants "intend to revoke her tenure" and "plan to revoke her tenure," occurrences that only

"might happen in the future."  Defs.' Mem. in Support 7, 10.  According to Defendants, Plaintiff

continues to be a full professor of the UT faculty, and her claims are nothing more than hypothetical

at this point.  Therefore, the Court should dismiss Plaintiff's § 1983 claims for ripeness.

Second, Defendants argue that the UT Defendants are entitled to sovereign immunity under

the Eleventh Amendment as to all of Plaintiff's claims under federal law and state law.  For the same

reasons, Plaintiff's claims against the individual Defendants in their official capacities are also

barred.  Third, Defendants argue that the Amended Complaint fails to state a claim against

Defendants Dr. Hofmann, Dr. DiPietro, Dr. Smith, Dr. Schwab, and Dr. Scheid in their individual

capacities.  The pleadings did not allege that any of these Defendants took any actions in their

individual capacities to deprive Plaintiff of any constitutional right.

Fourth, with respect to Plaintiff's remaining § 1983 claims against other Defendants in their

individual capacities, Defendants argue that the Amended Complaint fails to state a claim for violations of Plaintiff's procedural due process rights. A defendant's failure to follow state-created procedures does not implicate constitutional rights unless the state's procedures do not meet the constitutional minimum. In this case, Defendants contend that Plaintiff's facial challenge to the procedures set out in the UT Faculty Handbook should fail. Fifth, the Amended Complaint also fails to state any claim for violations of Plaintiff's substantive due process rights, her equal protection rights, or her right to free speech. The Amended Complaint alleges no violation of any fundamental right to support Plaintiff's substantive due process challenge. Furthermore, the pleadings allege no facts to support Plaintiff's equal protection claim and fail to allege that Plaintiff spoke in her capacity as a private citizen on any matter of public concern. In the alternative, Defendants argue that the individual Defendants are entitled to qualified immunity for Plaintiff's § 1983 claims against them in their individual capacities.

Finally, Defendants argue that Plaintiff's claims under state law are subject to dismissal. The Amended Complaint fails to allege any facts to support Plaintiff's THRA aiding and abetting claim against any individual Defendant. Plaintiff has failed to state a claim for defamation because the Amended Complaint does not allege the exact defamatory statement, the publication of the defamatory statement, or any other communication other than statements between fellow employees, which cannot constitute defamation. Plaintiff's contract claim is without merit because Plaintiff has not alleged the existence of a contract to which any individual Defendant is a party. As for Plaintiff's contractual interference claims, the Amended Complaint does not allege any facts to show that Plaintiff's contract with UT has been breached, an essential element of any interference claim. Therefore, all of Plaintiff's state law claims against the individual Defendants should be dismissed

14

for failure to state a claim.

**A. Plaintiff's Arguments**

Plaintiff has responded in opposition to Defendants' Motion. Plaintiff begins by withdrawing all of her claims against the UT Defendants as well as her § 1983 claims for money damages against the individual Defendants in their official capacities. Further, Plaintiff concedes her claims against the individual Defendants for breach of contract, breach of the covenant of good faith and fair dealing, and defamation. As for the merits of her remaining claims, Plaintiff responds that all of her remaining claims are ripe. Plaintiff contends that Dr. Reed's demand that Plaintiff raise at least 25% of her salary through grants has already damaged her tenure and constitutes a "preliminary step in Defendants' plan to formally revoke [her] tenure." Pl.'s Mem. in Resp. 3. Plaintiff also contends that should the Court dismiss her claims on ripeness grounds, she will suffer irreparable damage to her professional reputation.

Next Plaintiff responds that she has properly pleaded her § 1983 claims for prospective injunctive relief against the individual Defendants in their official capacities. Plaintiff argues that her Amended Complaint states a claim to enjoin Defendants to retract her two negative evaluations, to cease efforts to revoke her tenure, to reassign her to another supervisor besides Dr. Reed, and to develop a mutually agreeable process for evaluating Plaintiff's teaching and scholarship. Plaintiff argues this kind of prospective injunctive relief is available against the individual Defendants under § 1983.

With respect to the her claims for money damages against the individual Defendants in their individual capacities, Plaintiff argues that her Amended Complaint plausibly alleges that the individual Defendants have violated her constitutional rights. Plaintiff has a protected property

interest in her full salary and continued employment at UT and is therefore entitled to due process before Defendants can deprive her of her property.  According to Plaintiff, the Amended Complaint states a claim for the deprivation of this property interest without due process.[3]  Plaintiff also challenges the adequacy of the procedures UT has adopted to protect her tenure rights.  Based on these allegations, Plaintiff asserts that she has stated a claim for violation of her procedural and substantive due process rights.  The Amended Complaint states a claim for retaliation in violation of the First Amendment as well.  Plaintiff argues that she complained about violations of UT Faculty Handbook procedures and appealed both of her unsatisfactory performance reviews.  Plaintiff contends that this speech was undertaken in her capacity as a concerned citizen and related to matters of public interest.  As for her equal protection claim, Plaintiff has alleged that as the only female member of HVE department, Defendants singled her out for a reduction in salary and loss of tenure.

Next Plaintiff argues that none of the individual Defendants are entitled to qualified immunity.  Plaintiff states that since October 2009, she has provided written notice to each Defendant of the constitutional implications of their respective actions.  As a result, these Defendants had reasonable notice that their acts violated Plaintiff's constitutional rights.  Plaintiff argues in the alternative that the Court should allow Plaintiff to engage in discovery on the issue of qualified immunity and withhold its ruling on the issue until that discovery is completed.

---

[3] Plaintiff argues specifically that Dr. Reed's decision to require Plaintiff to raise 25% of her base salary through grants was made without notice or a hearing and thus constitutes "a constructive taking."  Dr. Reed also failed to follow UT Faculty Handbook requirements by developing a remediation plan for Plaintiff without her input.  According to Plaintiff, Dr. Stern has ignored UT Faculty Handbook procedures as part of the ongoing plan to terminate Plaintiff's tenure.

Plaintiff further argues that she has pleaded factual support for her remaining claims against the individual Defendants in their individual capacities.  While conceding that § 1983 does not create respondeat superior liability or liability for failure to act, Plaintiff maintains that she has pleaded sufficient facts against each individual Defendant to state a claim against them on the remaining counts under the THRA and the unlawful inducement to breach and contract interference claims.  Plaintiff has alleged that Defendants discriminated against her on the basis of her sex in violation of the THRA by giving her poor performance reviews, attempting to strip her of tenure, and threatening to reduce her salary.  Defendants have also acted to induce the breach of and tortiously interfere with Plaintiff's tenure contract and guarantee of her full salary from UT.  For these reasons Plaintiff argues that Defendants' Motion to Dismiss should be denied.

**B. Defendants' Reply**

In reply Defendants reiterate their arguments that the Court should dismiss Plaintiff's § 1983 claims for ripeness.  Even if the Court holds that the claims are ripe, Defendants contend that Plaintiff has failed to state them.  Defendants attack Plaintiff's procedural due process claim by arguing that no taking has actually occurred.  Plaintiff has not alleged that her salary has been reduced.  Furthermore, Dr. Reed's demand that Plaintiff seek outside grants and funding to make-up 25% of her salary occurred in October 2009 and is thus time-barred.  Defendants add that the procedures at issue are based on the Tennessee Uniform Administrative Procedure Act and that other courts have held that the TUAPA satisfies constitutional minimum protections.  Concerning Plaintiff's First Amendment retaliation claim, Defendants assert that Plaintiff's complaints about her performance reviews and violations of the UT Faculty Handbook did not touch matters of public concern.  Defendants also contend that Plaintiff has not alleged that she has suffered any damages

as a result of Defendants' retaliatory acts.  As for Plaintiff's equal protection claim, Defendants argue that Plaintiff has not pleaded any facts to show that she was similarly situated to her male counterpart who received a raise in 2011.  Nor does the Amended Complaint identify which individual Defendant was responsible for the violation of her equal protection rights.

Furthermore, Defendants argue that the Court should dismiss all of Plaintiff's § 1983 claims against the individual Defendants because § 1983 does not create respondeat superior liability or liability for failure to act.  The only supervisor named in the pleadings is Dr. Reed, Plaintiff's department chair and immediate supervisor.  On this basis alone, Plaintiff has failed to state a claim against all of the other individual Defendants.  Moreover, Defendants continue to argue that they are entitled to qualified immunity on all of Plaintiff's § 1983 claims.  With respect to Plaintiff's claims under state law, the Amended Complaint fails to allege who aided and abetted the retaliation against Plaintiff or how they did so.  The Amended Complaint also fails to allege the breach of any contract, which is an essential element of Plaintiff's claims for inducement to breach and tortious interference.  Therefore, Defendants argue that all of Plaintiff's remaining claims are subject to dismissal.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.[4]  However, legal

---

[4] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

conclusions or unwarranted factual inferences need not be accepted as true.[5]  "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[6]

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[7]  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[8]  In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[9]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

## ANALYSIS

### I. Plaintiff's Conceded Claims

In her response to Defendants' Motion to Dismiss, Plaintiff concedes all of her claims against UT and withdraws all of her claims under § 1983 against the individual Defendants in their official

---

[5] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[6] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[7] Fed. R. Civ. P. 8(a)(2).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555).

[9] *Twombly*, 550 U.S. at 555, 570.

[10] *Iqbal,* 556 U.S. at 678.

capacities for money damages.  Plaintiff maintains that she has pleaded § 1983 claims against the individual Defendants in their official capacities for prospective injunctive relief.  Plaintiff has also conceded her claims for breach of contract, breach of the covenant of good faith and fair dealing, and defamation against the individual Defendants in their individual capacities.  "The plaintiff remains the master of its complaint, and when it says that it is not bringing a [particular] claim, we should take it at its word."[11]  Therefore, Defendants' Motion to Dismiss is **GRANTED** as to these claims.

The only contested claims remaining then are the following: § 1983 claims for prospective injunctive and declaratory relief against the individual Defendants in their official capacities; § 1983 claims for money damages against the individual Defendants in their individual capacities; THRA claim against the individual Defendants in their individual capacities; and unlawful inducement to breach contract and tortious interference with contract claims against the individual Defendants in their individual capacities.  The Court will analyze each of the remaining claims in turn.

## II. Ripeness

Defendants argue at the outset that Plaintiff's request for an injunction "preserving Dr. Morreim's tenure" and "enjoining Defendants from pursuing any and all further efforts to revoke or otherwise imperil Dr. Morreim's academic tenure" is not yet ripe.  Specifically, the Amended Complaint alleges that Plaintiff continues to be a full professor and that no tenure termination proceedings have begun.  Defendants argue without elaboration that Plaintiff's claims for "other creative, unprecedented injunctive remedies" are not ripe.  Plaintiff responds that her federal claims

---

[11] *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 458 (6th Cir. 2007).

are ripe because an "injury to the status of her tenure has **already** occurred."[12]  The injury consists of Dr. Reed's demand that Plaintiff raise at least 25% of her annual salary from outside sources. Plaintiff argues that Defendants' actions "amount to a constructive taking and fundamental redefinition" of her tenure and as practical matter represent "a preliminary step in Defendants' plan to formally revoke [Plaintiff's] tenure."[13]  Plaintiff adds that she "will suffer irreparable harm to her reputation and career for which there is no adequate remedy at law."[14]  Therefore, her federal claims are ripe.

The ripeness of a Plaintiff's claims to establish a "concrete case or controversy" is a threshold question.[15]  "The ripeness doctrine serves to avoid premature adjudication of legal questions and to prevent courts from entangling themselves in abstract debates that may turn out differently in different settings."[16]  Ripeness is essentially "a question of timing" and advises "against resolving a case that is anchored in future events that may not occur as anticipated, or at all."[17]  The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."[18]  A claim is ripe where (1) there is a

---

[12] Pl.'s Resp. in Opp'n 3 (emphasis in original).

[13] *Id.*

[14] *Id.* at 4.

[15] *Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 579 (1985).

[16] *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (quoting *Nat'l Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 807 (2003) (internal brackets and ellipsis omitted)).

[17] *Nat'l Rifle Ass'n of Am. v. Magaw,* 132 F.3d 272, 284 (6th Cir. 1997).

[18] *Warshak*, 532 F.3d at 525 (quoting *Nat'l Park Hospitality Ass'n*, 538 U.S. at 808).

likelihood that the harm alleged by the plaintiff will come to pass; (2) the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) hardship to the parties exists if judicial relief is denied at this stage in the proceedings.[19]  A claim is not "fit" for judicial review when there is no certainty whether the challenged conduct will occur in the future.[20]  Furthermore, a constitutional claim is not ripe when it presents "difficult legal questions before they arise and before the courts know how they will arise."[21]

Applying these principles to the case at bar, the Court holds that Plaintiff's constitutional claims based on the possible termination of her tenure are not yet ripe.  Such claims are not well-suited for judicial review because Plaintiff continues to hold her tenured position.  Even accepting the factual allegations of the Amended Complaint as true, Defendants have only initiated "proceedings to revoke Dr. Morreim's tenure . . . ."[22]  Plaintiff has not alleged that Defendants will certainly strip Plaintiff of her tenure in the future.[23]  Plaintiff concedes as much in her brief where

---

[19] *Berry v. Schmitt,* 688 F.3d 290, 298 (6th Cir. 2012); *see also Lawrence v. Welch*, 531 F.3d 364, 373–74 (6th Cir. 2008) (holding that the first inquiry is whether the claim "is fit for judicial decision") (quoting  *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967) (ellipsis and internal brackets omitted) (Sutton, J., concurring).  The Sixth Circuit has explained that Judge Sutton's concurrence in *Lawrence* represented the holding in that case on the ripeness issue. *Berry*, 688 F.3d at 301 n.3 ("Judge Bertelsman's opinion was not the majority opinion with regard to the *Lawrence* attorney's request for prospective relief.  Judge Sutton's concurrence was joined by Judge Rogers, giving that opinion controlling weight with regard to the [ripeness of the] prospective relief.") (internal citations omitted).

[20] *Warshak*, 532 F.3d at 526 (citing *Tex. v. United States,* 523 U.S. 296, 300 (1998) (holding that a claim is not ripe where it depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all").

[21] *Id.* (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 894 (1990)).

[22] Am. Compl. ¶ 52.

[23] *Warshak*, 532 F.3d at 526.

she describes the events that led up to her filing suit only as "a *preliminary* step in Defendants' plan to formally revoke" her tenure.[24]  Plaintiff argues that Defendants' actions evidence their "intent to ignore Due Process procedures *in the future*."[25]  The allegations of the Amended Complaint are also revealing in this regard.  Plaintiff has alleged that Defendants "have made it clear that they *intend* to revoke" Plaintiff's tenure and "have moved clearly and steadily *toward* a violation of Dr. Morreim's constitutional rights."[26]  Based on this record, the Court concludes that Plaintiff's constitutional claims under § 1983 for the loss of her tenure are not ripe.  Furthermore, Plaintiff's tenure claim presents "difficult legal questions before they arise and before the courts know how they will arise."[27]  Plaintiff argues that Defendants' actions have or will violate the Due Process Clause, the Equal Protection Clause, and the First Amendment, claims which typically involve a fact intensive and searching legal analysis.  Therefore, any claim based on the revocation of Plaintiff's tenure is dismissed pursuant to Rule 12(b)(1) on ripeness grounds and without prejudice to re-file the claim in a subsequent pleading.[28]

To the extent that Plaintiff's Amended Complaint can be construed to allege ripe constitutional claims, the Court considers the merits of pleadings separately for each cause of action.

## III. Constitutional Claims

---

[24] Pl.'s Resp. in Opp'n 10 (emphasis added).

[25] *Id.* (emphasis added).

[26] Am. Compl. ¶ 55 (emphasis added).

[27] *Warshak*, 532 F.3d at 526.

[28] *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005) (holding that dismissal without prejudice was required where the district court concluded that a § 1983 claim was not ripe); *see also Gies v. Flack*, No. C-3-96-61, 1996 WL 1671234 (S.D. Ohio Apr. 24, 1996).

To state a claim for the deprivation of a constitutional right under 42 U.S.C. § 1983, a plaintiff must allege (1) that the defendant acted under color of state law and (2) that the defendant's conduct deprived the plaintiff of rights secured by the Constitution.[29]  "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred."[30]  "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings."[31]  Plaintiff has asserted four separate theories of recovery for violations of § 1983: denial of her Fourteenth Amendment procedural and substantive due process rights; violation of her equal protection rights; and retaliation in violation of her First Amendment free speech rights.  The Court will analyze each of Plaintiffs' theories in turn.

**A. Procedural Due Process**

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law."[32]  With respect to procedural due process, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an

---

[29] *Fritz v. Charter Tp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Wittstock*, 330 F.3d at 902.

[30] *Smith v. Shelby Cnty.*, 721 F. Supp. 2d 712, 723 (W.D. Tenn. 2010); *Humes v. Gilless,* 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001) (citing *Graham v. Connor,* 490 U.S. 386, 393–94 (1989)).

[31] *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir. 1986).

[32] U.S. Const. amend. XIV, § 1.

24

interest without due process of law.[33]  In other words, a constitutional claim under § 1983 is not complete when the deprivation occurs; it is complete only when the state fails to provide due process.[34]  "When reviewing a procedural due process claim, [a court] must determine whether a protected liberty or property right is at stake and, if so, what process is due."[35]  Plaintiff must prove three elements: (1) she had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that Defendants deprived her of her protected interest; and (3) that Defendants did not afford her adequate procedural rights before depriving her of this protected interest.[36]  It is well-settled that a tenured college professor at a public institution has a constitutionally-protected property interest in her teaching post and cannot be deprived of her tenure without due process of law.[37]  Consequently, "[p]rofessors with tenure . . . may not be discharged without receiving a hearing in which they are informed of the grounds for their dismissal and given the opportunity to challenge the sufficiency of those grounds."[38]

To the extent that Plaintiff's procedural due process claim is based on the actions Defendants have already taken against her, the Court holds that the Amended Complaint fails to state such a

---

[33] *Parratt v. Taylor,* 451 U.S. 527, 537 (1981); *Carey v. Piphus,* 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property").

[34] *Zinermon v. Burch,* 494 U.S. 113, 125–26 (1990).

[35] *Handy–Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 546 (6th Cir. 2012).

[36] *Wedgewood Ltd. P'ship I v. Twp. Of Liberty, Ohio,* 610 F.3d 340, 349–50 (6th Cir. 2010).

[37] *Johnston–Taylor v. Gannon,* 907 F.2d 1577, 1581 (6th Cir. 1990) (citing *Bd. of Regents v. Roth,* 408 U.S. 564, 576 (1972)).

[38] *Id.* (citing *Whitsel v. Se. Local Sch. Dist.*, 484 F.2d 1222, 1228 (6th Cir. 1973)).

claim under Rule 12(b)(6).  The Amended Complaint alleges that Defendants have already taken a series of actions against Plaintiff in violation of her procedural due process rights, making these actions ripe for judicial review.  First, based on the arguments in her response brief, Plaintiff seems to assert a claim based on Dr. Reed's "demand that Dr. Morreim pay for at least 25% of her base salary through extramural grants or other consulting activity."[39]  Plaintiff contends that this demand constitutes a "constructive taking and fundamental redefinition" of her tenure rights and a denial of procedural due process.  The Court holds that this claim fails because Plaintiff has not alleged how Defendants deprived her of a protected interest, an essential element of her procedural due process claim.  The Amended Complaint alleges that Plaintiff continues to hold tenure and receive her full salary.[40]  Morever, Plaintiff has cited no authority in support of her theory that Dr. Reed's demand in and of itself amounts to a "constructive taking" much less a "fundamental redefinition" of her tenure.[41]  While it is true that Dr. Reed's demand has allegedly resulted in two poor evaluations as well as the review of Plaintiff's tenure, the Court holds that Dr. Reed's demand does not constitute the deprivation of a protected interest.  Therefore, the Amended Complaint fails to state a procedural due process claim as to this issue.

---

[39] Pl.'s Resp. in Opp'n 10.

[40] Am. Compl. ¶ 1("Dr. Morreim was at all relevant times employed by the University of Tennessee as a tenured, full professor and member of the faculty in good standing.").

[41] Plaintiff's theory of constructive taking apparently borrows the concept from the law of eminent domain.  *Amen v. City of Dearborn*, 718 F.2d 789, 796 (6th Cir. 1983) ("While the mere decline in property values does not, per se, constitute a taking requiring compensation, governmental action short of acquisition may constitute a constructive taking if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter.") (citations omitted)).  Plaintiff has cited (and the Court has found) no authority applying the concept of constructive taking in the context of academic tenure.

Second, Plaintiff's brief can be read to assert a procedural due process claim for Defendants' alleged failure to follow certain procedures set forth in the UT Faculty Handbook. Specifically, Plaintiff argues that Dr. Reed failed to work with Plaintiff to develop "mutually established" goals for her performance and then issued two unsatisfactory evaluations when Plaintiff failed to meet the goals in the 2009-2010 and 2010-2011 academic years, all in violation of § 4.16.3 of the Faculty Handbook. Dr. Reed then developed a remediation plan for Plaintiff without obtaining her agreement on the terms of the plan. Plaintiff further contends that Dr. Stern ignored the conclusions of the Cumulative Performance Review committee, even though the committee scrupulously followed the requirements of the Faculty Handbook. Accepting these allegations as true, the Court holds that the Amended Complaint fails to state a cognizable constitutional claim based on alleged violations of the Faculty Handbook. The Sixth Circuit has held that a state college or university's failure to follow its own faculty rules and procedures does not state a procedural due process claim.[42] "Violation of a state's formal procedure . . . does not in and of itself implicate constitutional due process concerns."[43] As such, the Amended Complaint fails to state a procedural due process claim for Defendants' failure to follow handbook policy.

Finally, Plaintiff argues that Defendants' tenure termination procedures are inherently defective and fail to meet constitutional due process standards. Plaintiff contends that the handbook procedures are merely "advisory." Both parties have attached relevant excerpts of the Faculty

---

[42] *Anderson v. Ohio State Univ.*, 26 F. App'x 412, 414 (6th Cir. 2001); *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996); *Levine v. Torvik,* 986 F.2d 1506, 1515 (6th Cir. 1993).

[43] *Purisch*, 76 F.3d at 1423.

27

Handbook to their briefs.[44]  Plaintiff cites § 8.3.1 of the Faculty Handbook entitled "Termination Procedure for Category A - Adequate Cause: Unsatisfactory Performance in Teaching, Research or Service" and claims that "the supposed procedural protections in place at UT, as administered, are a sham . . . ."[45]  Upon review of § 8.3.1, however, the Court finds that the only "advisory" step of the procedures concerns the report and vote of the tenured faculty.[46]  Under paragraph 2 of § 8.3.1, the tenured faculty of the department will review the faculty member's performance in teaching, research and service; prepare a report for the department chairperson; and then vote on the question of whether termination proceedings should be initiated.  The Handbook provides that "[t]he faculty vote shall be advisory to the Chair" but also states that the Chair should report the faculty vote to the Dean when the Chair makes his or her recommendation about initiating the termination proceedings.  The Faculty Handbook goes on to create additional procedures, including a faculty member's right to elect between a hearing under the Tennessee Uniform Administrative Procedures

_____

[44] Ex. A, Defs.' Mem. in Support (D.E. # 32-2); Ex. 1, Pl.'s Resp. in Opp'n (D.E. # 38-1). As Plaintiff correctly argues, the Court can consider the exhibits without converting Defendants' Rule 12(b) Motion to a motion for summary judgment.  The Faculty Handbook is referenced extensively in the Amended Complaint.  *Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 863 (6th Cir. 2012).

[45] Pl.'s Resp. in Opp'n 12.  The Court construes Plaintiff's argument as a facial challenge to the procedures, even though Plaintiff makes passing reference to the procedures "as administered."  To the extent that Plaintiff is asserting an as-applied challenge to the sufficiency of the tenure termination proceedings, the Court holds that the challenge is not ripe because the Amended Complaint does not allege that all of the proceedings in § 8.3.1have actually taken place.

[46] Faculty Handbook § 8.3.5 further states that once the Dean recommends tenure termination to the UT Chief Academic Officer ("the CAO") and the CAO determines that termination proceedings should be initiated, the CAO should next meet with the faculty member to discuss the situation.  If the CAO cannot resolve the issue with the faculty member, the CAO must ask the Faculty Senate Grievance committee to make a recommendation.  Faculty Handbook § 8.3.5(c).  This committee's recommendation is also advisory to the CAO.  *Id.*

Act (with the right of judicial review) or a hearing before a tribunal.  Despite Plaintiff's characterization of the process, none of these procedures appear to be "advisory."  Based on the allegations of the Amended Complaint, § 8.3.1 of the Faculty Handbook, and Plaintiff's briefing of the issue, the Court concludes that Plaintiff has failed to state a facial procedural due process claim concerning the procedures in the Faculty Handbook.  Therefore, Defendants' Motion to Dismiss Plaintiff's procedural due process claim for lack of subject matter jurisdiction and failure to state a claim is **GRANTED**.

**B. Substantive Due Process**

Defendants next seek dismissal of Plaintiff's substantive due process claim.  The "ephemeral concept" of substantive due process protects "specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action."[47] While "substantive due process rights are created only by the Constitution,"[48] substantive due process safeguards only those rights "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty such that neither liberty nor justice would exist if they were sacrificed."[49]  Substantive due process claims fall into two basic categories: (1) claims asserting the denial of a right, privilege, or immunity secured by the U.S. Constitution or federal statute;[50] or (2)

---

[47] *Gutzwiller v. Fenik,* 860 F.2d 1317, 1328 (6th Cir. 1988).

[48] *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring).

[49] *United States v. Windsor*, 133 S. Ct. 2675, 2714–15, 186 L. Ed. 2d 808 (2013) (Alito, J., dissenting) (quoting *Wash. v. Glucksberg,* 521 U.S. 702, 720–721 (1997) (internal quotation marks omitted)).

[50] *Parratt*, 451 U.S. at 532 (1981) overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327, 329 (1986).

29

official conduct that "shocks the conscience" of the court.[51]  In the realm of academia, "courts may override a decision under substantive due process only if that decision is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."[52]  The Sixth Circuit has held that there is no substantive due process right "to remain in a position of public employment free from arbitrary action."[53]  Even so, an adverse tenure decision based on a protected characteristic such as race or gender "constitutes an arbitrary and capricious deprivation of the individual's liberty interest in not being terminated from governmental employment for a constitutionally impermissible purpose."[54]

The Court holds that the Amended Complaint fails to state a ripe substantive due process claim.  The only allegation to support Plaintiff's substantive due process claim is as follows: "Dr. Morreim is entitled to equal protection and substantive due process under the United States Constitution.  The Defendants' actions violated Dr. Morreim's equal protection and substantive due process rights."[55]  Defendants argue that the pleadings have not identified a fundamental right protected by substantive due process; therefore, no such claim appears on the face of the pleadings. Plaintiff responds that her substantive due process claim is based on Defendants' arbitrary and

---

[51] *Herrera v. Collins*, 506 U.S. 390, 435–36 (1993) (quoting *Rochin v. Calif.*, 342 U.S. 165, 172 (1952)).

[52] *Gutzwiller,* 860 F.2d at 1328 (citing *Ewing*, 474 U.S. at 214)).

[53] *Hopkins v. Canton City Bd. of Educ.*, 477 F. App'x 349, 365–66 (6th Cir. 2012) (citing *Bell v. Ohio State Univ.,* 351 F.3d 240, 251 (6th Cir. 2003)).

[54] *Mertik v. Blalock*, 983 F.2d 1353, 1367–68 (6th Cir. 1993) (citing *Gutzwiller,* 860 F.2d at 1329).

[55] Am. Compl. ¶ 78.

capricious violations of the Faculty Handbook.[56]  Insofar as the Amended Complaint merely alleges that Defendants have acted arbitrarily and capriciously to deprive Plaintiff of governmental employment, Plaintiff has failed to plead a cognizable substantive due process claim.  Therefore, Defendants' Motion is **GRANTED** on such a claim.

Although neither party has raised the issue, the Sixth Circuit held that *Gutzwiler*, a case cited by Plaintiff in support of her substantive due process argument, "recognizes a narrow substantive due process right to protection against losing one's job because of an independent constitutional violation, such as an equal protection violation."[57]  As more fully discussed below, Plaintiff argues that Defendants have violated her equal protection rights by singling her out on the basis of her gender to revoke her tenure.  The Amended Complaint alleges that "Dr. Morreim was discriminated against and retaliated against in violation of the Equal Protection Clause."[58]  In her response to Defendants' Rule 12(b) Motion, Plaintiff also argues that the following allegation supporting her THRA claim supports her equal protection claim as well: "Defendants discriminated against Dr. Morreim on the basis of her sex by subjecting her to negative evaluations attempting to strip her of tenure; and subjecting her to discrimination in terms of pay . . . ."[59]

To the extent that Plaintiff alleges an independent substantive due process claim based on

---

[56] Pl.'s Resp. in Opp'n 13 ("Such violations of the University's own procedural regulations constitute a deprivation of Dr. Morreim's substantive due process rights, and as such, Dr. Morreim has adequately pleaded her substantive due process claim.") (citing *Gutzwiler*; *Brenna v. S. Colo. St. Coll.*, 589 F.2d 475, 477 (10th Cir. 1978); *Bignall v. N. Idaho Coll.*, 538 F.2d 243, 248–49 (9th Cir. 1976).

[57] *Hopkins*, 477 F. App'x at 365–66.

[58] Am. Compl. ¶ 80.

[59] *Id.* ¶ 87.  The Amended Complaint further alleges that one of Plaintiff's male counterparts, Dr. Carson Strong, received a larger bonus than Plaintiff in 2011.  *Id.* ¶ 42.

the alleged denial of her equal protection rights, the Court holds that such a claim is not ripe. It is possible for Plaintiff to state a substantive due process claim based on a violation of the Equal Protection Clause. However, the Sixth Circuit has recognized only a "narrow substantive due process right" against "*losing one's job* because of" an equal protection violation.[60] Plaintiff has not alleged that Defendants have dismissed her from her tenured position. Thus, Plaintiff has not alleged that Defendants have harmed her "liberty interest in not being *terminated* from governmental employment for a constitutionally impermissible purpose."[61] In short, a limited substantive due process claim predicated on Plaintiff's termination on account of her gender is not yet ripe. Defendants' Rule 12(b)(1) Motion is **GRANTED** as to this issue and without prejudice to re-file the claim in a subsequent pleading. Therefore, Defendants' Motion to Dismiss Plaintiff's substantive due process claim for lack of subject matter jurisdiction and failure to state a claim is **GRANTED**.

### C. Equal Protection Claim

Defendants next contend that the Amended Complaint fails to state an equal protection claim. The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."[62] "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any

---

[60] *Id.* (emphasis added).

[61] *Mertik*, 983 F.2d at 1367–68 (citing *Gutzwiller*, 860 F.2d at 1329) (emphasis added).

[62] U.S. Const. amend XIV, § 1.

rational basis for the difference."[63]   In order to state an equal protection claim, Plaintiff must plausibly plead that Defendants treated Plaintiff "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis."[64]   As previously discussed, the Amended Complaint alleges broadly that "Dr. Morreim was discriminated against and retaliated against in violation of the Equal Protection Clause."[65]   In her memorandum, Plaintiff asserts that Defendants have treated Dr. Carson Strong and Dr. Terry Ackerman more favorably than Plaintiff because they are males.   Plaintiff is arguably pursuing a "suspect class" or "class-of-one" equal protection claim.   For the reasons that follow, the Court holds that the Amended Complaint fails to state either claim.

The Court first holds that the Amended Complaint fails to state a "class-of-one" equal protection claim.   No such claim is available in the context of public employment.[66]   The Supreme Court has explained that "ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly constitutionalize the employee grievance."[67]   Public employees seeking review of personnel decisions have "a variety of protections," just not the Equal Protection Clause.[68]   Simply put, "federal court is not the appropriate forum in which to review the multitude

---

[63] *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011) (*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)).

[64] *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

[65] Am. Compl. ¶ 80.

[66] *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 609 (2008).

[67] *Id.* (quotation omitted).

[68] *Id.*

of personnel decisions that are made daily by public agencies."[69]   Therefore, to the extent that the Amended Complaint pleads a "class-of-one" equal protection claim, Defendants' Motion to Dismiss is **GRANTED** on the issue pursuant to Rule 12(b)(6).

The Court further holds that Plaintiff has failed to plead an equal protection claim for gender-based discrimination due to her poor evaluations and the tenure review proceedings.  The Equal Protection Clause prohibits official state action discriminating against individuals on the basis of sex.[70]  In fact, disparate treatment is the "threshold element of an equal protection claim."[71]  "In making an equal protection challenge, the plaintiff must demonstrate that a discrimination of some substance has occurred which has not occurred against other individuals who were similarly situated."[72]  The Sixth Circuit has held that a plaintiff fails to plead an equal protection claim for gender discrimination where the pleadings simply allege that the plaintiff is a woman but fail to allege that the defendant acted with a discriminatory purpose or that similarly situated males received more favorable treatment.[73]  Here Plaintiff has only alleged that she is a woman and that Defendants have taken certain actions to put Plaintiff's tenure in jeopardy.  The Amended Complaint

---

[69] *Id.* (citation omitted).

[70] *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 248 (6th Cir. 2006) (citing *United States v. Va.*, 518 U.S. 515 (1996)).

[71] *Ctr. for Bio-Ethical Reform*, 648 F.3d at 379.

[72] *Hall v. Callahan*, 727 F.3d 450 (6th Cir. 2013) (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)).

[73] *Rondigo*, 641 F.3d at 682 ("Plaintiffs' mere allegations that Dolores Michaels is a woman and Rondigo is a woman-owned business do not make out a claim for gender-based discrimination targeting them as members of a suspect class."); *Brooks v. Knapp*, 221 F. App'x 402, 408–409 (6th Cir. 2007) ("The complaint, however, does not sufficiently allege that Officers Knapp, Drumb, and Vanderbilt, in their individual capacity, acted in a discriminatory manner toward Mrs. Hernandez, for any reason.").

does not allege that Defendants have done so on the basis of Plaintiff's gender.

Moreover, the Amended Complaint does not allege that Defendants treated other faculty members differently in performing their annual evaluations or by initiating a review of tenure, much less that the other faculty members were similarly situated to Plaintiff. The Sixth Circuit has held that "bare allegations that other [employees], even all other [employees], were treated differently is insufficient to establish an equal protection violation unless the plaintiff shows that these other applicants were similarly situated to the plaintiff."[74] As a result, the Amended Complaint does not adequately plead disparate treatment, the "threshold element" of the claim. Therefore, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's equal protection claim.

The Court finds Plaintiff's argument in response to Defendants' Rule 12(b) Motion to be unconvincing. Plaintiff contends that "Defendants have not subjected Dr. Carson and Dr. Ackerman to the same unlawful acts to which Dr. Morreim has been subjected, due to the fact that Dr. Carson and Dr. Ackerman are males."[75] The problem lies in the fact that Plaintiff has not actually made this allegation in the Amended Complaint.[76] In Count III of the Amended Complaint Plaintiff asserts that "Defendants discriminated against Dr. Morreim on the basis of her sex by subjecting her to negative evaluations attempting to strip her of tenure; and subjecting her to discrimination in terms of pay . . . ." (*id.* ¶ 87). However, these well-pleaded allegations are specifically alleged in support Plaintiff's THRA claim, not her § 1983 claim. Count II of the Amended Complaint, which sets forth

---

[74] *Schellenberg v. Twp. of Bingham*, 436 F. App'x 587, 592 (6th Cir. 2011).

[75] Pl.'s Resp. in Opp'n 15.

[76] Plaintiff does request leave to amend her pleadings in the event the Court finds her "allegations are not sufficiently definite to state a claim under any one of Plaintiff's causes of actions . . . ." *Id.* at 20. The Court addresses Plaintiff's request to amend below.

Plaintiff's § 1983 claims for damages including her equal protection claim, refers to Plaintiff's "property interest in her job" (*id.* ¶ 76) and asserts that Plaintiff "cannot be terminated, stripped of tenure, demoted, made to fund her own position, stripped of her status, or otherwise adversely diminished in her position" without due process (*id.* ¶ 77).   Count II never refers to discrimination on the basis of gender or the more favorable treatment allegedly received by Dr. Ackerman or Dr. Strong.   In fact, Count II never refers to disparities in pay between Plaintiff and Dr. Strong and never mentions Dr. Ackerman at all.[77]   Therefore, the Amended Complaint fails to state an equal protection claim based on Plaintiff's gender.   Defendants' Motion to Dismiss Plaintiff's equal protection claim for lack of subject matter jurisdiction and failure to state a claim is **GRANTED**.

### D. First Amendment Retaliation

Defendants also seek dismissal of Plaintiff's First Amendment retaliation claim.   According to the pleadings, Plaintiff's free speech claim is based on her "report that [UT] faculty members were violating her rights; [her complaint] about unlawful actions by [UT] in general; and [her complaint] about unlawful actions by [UT] directed specifically toward her."[78]   In her memorandum, Plaintiff specifies that her protected speech included complaints about "Defendants' repeated violations of the provisions contained in the Faculty Handbook, and in retaliation for filing appeals of the two (2) unsatisfactory evaluations issued by Dr. Reed in which Dr. Morreim reported the

---

[77] According to the pleadings, Dr. Carson received a larger bonus than Plaintiff in 2011 (Am. Compl. ¶ 42).   Count II incorporates this allegation by reference (*id.* ¶ 73), and Plaintiff argues that this pleading supports her equal protection claim.   Even though Count II incorporates the underlying factual allegation, Count II never mentions a bonus or pay disparity and never alleges that the disparity was based on Plaintiff's gender.   *See Rondigo*, 641 F.3d at 682.

[78] Am. Compl. ¶ 79.

unlawful and unconstitutional actions of Defendants that were directed towards her."[79] Plaintiff adds in her brief that she made these complaints as a concerned citizen and for the purpose of bringing to light public corruption and discrimination.  Plaintiff contends that Defendants have "damaged [her] tenure and have steadily moved toward formal revocation of her tenure."[80]  Defendants argue that Plaintiff's speech does not touch a matter of public concern because Plaintiff made complaints about her job assignment and performance evaluation in her capacity as a private citizen. Furthermore, damage to Plaintiff's tenure does not constitute an adverse action.

The Sixth Circuit has held that retaliation for the exercise of constitutional rights is itself a violation of the Constitution.[81]  In order to state a § 1983 claim that a government official retaliated against a plaintiff in violation of the First Amendment, the plaintiff must allege the following elements: (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.[82]  Whether a public employee's speech is protected in a First Amendment retaliation case is a question of law.[83]  In order to establish that her speech was protected, Plaintiff must first show that the speech touched on a matter of public concern.[84]  Next Plaintiff must show that under the

---

[79] Pl.'s Resp. in Opp'n 14.

[80] *Id.*

[81] *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999).

[82] *Fritz*, 592 F.3d at 723; *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012).

[83] *Dixon v. Univ. of Toledo*, 702 F.3d 269, 274 (6th Cir. 2012).

[84] *Id.*; *Connick v. Myers,* 461 U.S. 138, 142 (1983)

*Pickering* balancing test, her "free speech interests outweigh the efficiency interests of the government as employer."[85]  Finally, Plaintiff must show that the speech was made in her capacity as a private citizen, not pursuant to her official duties as a UT faculty member.[86]  In short, Plaintiff "must satisfy *each* of these requirements: the *Connick* 'matter of public concern' requirement, the *Pickering* 'balancing' requirement and the *Garcetti* 'pursuant to' requirement."[87]

The Court holds that the Amended Complaint fails to state a ripe First Amendment retaliation claim.  For the reasons already discussed, any claim based on the possible revocation of Plaintiff's tenure is not yet ripe.  Although the ripeness doctrine "is somewhat relaxed in the First Amendment context,"[88] Plaintiff must still show that Defendants will revoke her tenure and do so on the basis of her complaints about her evaluations and the tenure review process.  As previously explained, there is no certainty in this case that Defendants will actually revoke Plaintiff's tenure.[89]  At the time she filed her Amended Complaint, Plaintiff could only allege that Defendants "have steadily moved toward formal revocation of her tenure."[90]  In other words, Plaintiff continues to hold tenure and receive her full salary.  Furthermore, a First Amendment retaliation claim based on Plaintiff's prospective loss of tenure would present "difficult legal questions before they arise and

---

[85] *Dixon*, 702 F.3d at 274; *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968).

[86] *Dixon*, 702 F.3d at 274; *Garcetti v. Ceballos,* 547 U.S. 410 (2006).

[87] *Evans–Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.,* 624 F.3d 332, 338 (6th Cir. 2010).

[88] *Lawrence v. Welch*, 531 F.3d 364, 374 (6th Cir. 2008) (noting that First Amendment retaliation claims have a "relaxed" ripeness standard).

[89] *Warshak*, 532 F.3d at 526.

[90]  Pl.'s Resp. in Opp'n 14.

before the courts know how they will arise."[91] As the Supreme Court has noted, "[b]ecause of the enormous variety of fact situations in which critical statements by public employees may be thought by their superiors to furnish grounds for [retaliation], we do not deem it either appropriate or feasible to lay down a general standard against which all such statements may be judged."[92]   First Amendment retaliation claims are inherently fact-driven and context-based.  In this case the Court would need to tackle difficult legal questions before they have actually arisen.  Therefore, the Court holds that a claim based on the possible denial of Plaintiff's tenure is not yet "fit" for judicial review and should be dismissed without prejudice under Rule 12(b)(1).

To the extent that the Amended Complaint can be read to allege a ripe First Amendment retaliation claim for Plaintiff's poor evaluations and the initiation of tenure review proceedings, the Court holds that the pleadings fail to state such a claim.  Assuming without deciding that these acts constitute adverse actions,[93] Plaintiff has alleged no facts to show that her adverse actions were motivated in any way by her complaints to administration.  In the First Amendment context, Plaintiff must "point to specific, nonconclusory allegations reasonably linking her speech to employer discipline."[94]  The Sixth Circuit has affirmed the dismissal of a First Amendment retaliation claim where the pleadings failed to "sufficiently allege that [the protected] conduct motivated [the adverse

---

[91] *Warshak*, 532 F.3d at 526.

[92] *Connick*, 461 U.S. at 154 (quoting *Pickering*, 391 U.S. at 569).

[93] In order to satisfy the pleading standard for this element, Plaintiff must simply allege an employment action which "would chill or silence a person of ordinary firmness from future First Amendment activities." *Dye*, 702 F.3d at 303.  For purposes of its analysis, the Court assumes that the negative performance reviews and the initiation of tenure review would meet this standard.

[94] *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003).

action]."[95]  Therefore, dismissal of this claim is warranted for this reason alone.

Moreover, the Court holds that Plaintiff's internal complaints about "Defendants' repeated violations of the provisions contained in the Faculty Handbook" and her "filing appeals of the two (2) unsatisfactory evaluations issued by Dr. Reed" are not protected speech.  The Amended Complaint alleges that in response to her poor evaluations and tenure review proceedings, Plaintiff "expressly and directly informed each and every individual Defendant regarding the potential 14th Amendment implications of their conduct . . . ."[96]  Plaintiff has filed with her memorandum her communications with administration raising her Fourteenth Amendment concerns.[97]  According to these exhibits, Plaintiff invoked the possibility of due process violations with several administrators prior to filing suit.  For example, in a letter dated September 6, 2011, Plaintiff explained to Dr. Stern that violations of the Faculty Handbook  "will implicate the Fourteenth Amendment."[98]  In all, the exhibits show that Plaintiff mentioned the possibility of Fourteenth Amendment violations 24 times in three separate letters addressed to Dr. Smith, Dr. Stern, and Dr. Scheid.[99]

Viewing the allegations of the Amended Complaint in the light most favorable to Plaintiff, the Court holds that her internal complaints do not raise a "public concern."  Plaintiff's letters never

---

[95] *Unger v. City of Mentor*, 387 F. App'x 589, 594 (6th Cir. 2010) (affirming dismissal of a § 1983 First Amendment retaliation claim for failing to plead causation).

[96] Am. Compl. ¶ 55.

[97] Pl.'s Resp. in Opp'n, ex. 2 (D.E. # 38-2).  Just as with the Faculty Handbook, the Court can consider Plaintiff's letters without converting the Rule 12(b) Motion to a motion for summary judgment.  The Amended Complaint refers to Plaintiff's protected speech as the basis for her First Amendment claim.  *Morton Salt*, 702 F.3d at 863.

[98] Pl.'s Resp. in Opp'n, ex. 2 (Page ID # 362).

[99] *Id.* (Page ID # 347–49, 354–57, 370, 387).

raise any complaint about public corruption or discrimination.[100]  Rather Plaintiff has only alleged the possibility of constitutional violations in the event administration failed to afford her due process.  The Court construes this allegation as a "purely personal" internal employee grievance, which does not constitute a public concern.[101]  Otherwise, a public employee could "constitutionalize" any personnel matter by invoking the Due Process Clause in the course of a personnel dispute.[102] Defendants' handling of Plaintiff's evaluations and the review of her tenure cannot "be fairly considered as relating to any matter of political, social, or other concern to the community"[103] or as topics "of legitimate news interest."[104]  As a result, the Amended Complaint fails to state a First Amendment claim based on this speech.  Defendants' Motion to Dismiss is **GRANTED** on this issue pursuant to Rule 12(b)(6).  Therefore, Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation claim for lack of subject matter jurisdiction and failure to state a claim is **GRANTED**.

### III.    Plaintiff's Claims Under Tennessee Law

Plaintiff has alleged a series of other claims pursuant to Tennessee statute and common law. Where the Court has original jurisdiction over a claim, the Court may exercise its supplemental

---

[100] *Whitney v. City of Milan*, 677 F.3d 292, 297 (6th Cir. 2012) ("Allegations of public corruption and discrimination are, therefore, inherently of public concern.").

[101] *Van Compernolle v. City of Zeeland*, 241 F. App'x 244, 250 (6th Cir. 2007); *see also Golembiewski v. Logie*, 516 F. App'x 476, 477 (6th Cir. 2013).

[102] *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2497 (2011) ("It is precisely to avoid this intrusion into internal governmental affairs that this Court has held that, while the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance.") (internal quotation marks omitted)).

[103] *Connick,* 461 U.S. at 146.

[104] *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83–84 (2004).

jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.[105]  The Court is vested with the further discretion to decline to exercise supplemental jurisdiction under certain circumstances.[106]  This includes an instance when "the district court has dismissed all claims over which it has original jurisdiction."[107]  Generally, if a federal claim is dismissed before trial, the state claim should be dismissed as well.[108]  The Court has held that Plaintiff has failed to state ripe § 1983 claims against any Defendant.  Having dismissed the claims over which it has original jurisdiction, the Court declines to exercise its supplemental jurisdiction to hear Plaintiff's remaining state law claims.  Therefore, the THRA and contract claims are dismissed without prejudice to re-file.

## IV. Request to Amend the Pleadings

Having dismissed all of Plaintiff's claims, the Court need not consider whether the Amended Complaint states a claim against any of the individual Defendants in their individual capacities or whether the individual Defendants are entitled to qualified immunity.  At the conclusion of her response brief, Plaintiff states, "should the Court find Plaintiff's allegations are not sufficiently definite to state a claim under any one of Plaintiff's causes of actions, Plaintiff requests the Court to allow Plaintiff leave to amend her Complaint to provide[] a more definite statement."[109]  Under the Federal Rules of Civil Procedure, a party may amend its pleading with the opposing party's

---

[105] 28 U.S.C. § 1367(a).

[106] 28 U.S.C. § 1367(c).

[107] 28 U.S.C. § 1367(c)(1) & (3).

[108] *Taylor v. First of Am. Bank-Wayne,* 973 F.2d 1284, 1287 (6th Cir. 1992).

[109] Pl.'s Resp. in Opp'n 20.

written consent or the court's leave.[110]  "Leave to amend a complaint should be freely given when justice so requires after a responsive pleading has been filed."[111]  A district court abuses its discretion by denying a plaintiff leave to amend her complaint without any reason or justification.[112]  However, it is not an abuse of discretion to deny leave to amend without further explanation where "the plaintiff has already amended once and then subsequently fails to file a proper motion justifying another amendment."[113]  Furthermore, the default rule in this Circuit provides that "if a party does not file a motion to amend or a proposed amended complaint in the district court, it is not an abuse of discretion for the district court to dismiss the claims with prejudice."[114]

The Court finds that Plaintiff's request for leave to amend is not well-taken.  Plaintiff has already amended her pleadings once as a matter of course under Rule 15(a).  Plaintiff has not supported her request to amend a second time with a properly filed motion or a proposed amended complaint, setting forth exactly what allegations she would add to her pleadings.[115]  Had Plaintiff filed a motion for leave to amend, the Court could have considered the request before ruling on the merits of Defendants' Motion to Dismiss the First Amended Complaint.  Instead Plaintiff has made

---

[110] Fed. R. Civ. P. 15(a)(2).

[111] *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 425 (6th Cir. 2013) (citing Fed. R. Civ. P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

[112] *Foman,* 371 U.S. at 182.

[113] *Mellentine*, 515 F. App'x at 425 (citing *Pulte Homes, Inc. v. Laborers Int'l Union of N. Am.*, 648 F.3d 295, 305 (6th Cir. 2011)).

[114] *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 844 (6th Cir. 2012) (citation and internal quotation marks omitted).

[115] *See* Fed. R. Civ. P. 7(b)(1) (requiring that a request for court order be made by written motion and state with particularity the grounds for seeking the order).

only a bare request to amend in the last sentence on the last page of her brief. In essence, Plaintiff has sought an advisory opinion from the Court informing her of the deficiencies of the First Amended Complaint and then an opportunity to cure the defects.[116] The Court declines to follow such a course. What is more, several of Plaintiff's claims are not yet ripe, and the Court dismisses them without prejudice to re-file the claims in a subsequent pleading. Therefore, Plaintiff's request to amend is **DENIED**.

## **CONCLUSION**

The Court holds that Plaintiff's constitutional claims under § 1983 based on the possible loss of her tenure are not yet ripe pursuant to Rule 12(b)(1) and are dismissed without prejudice. The Amended Complaint fails to state Plaintiff's other constitutional claims based on poor evaluations and the conduct of the tenure review process. Those claims are dismissed with prejudice pursuant to Rule 12(b)(6). The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims under Tennessee law and dismisses them without prejudice. The Court further denies Plaintiff's request to file a second amended pleading. Therefore, Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) and 12(b)(6) is **GRANTED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: October 16, 2013.

---

[116] *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 459 (6th Cir. 2013); *see also Begala v. PNC Bank, Ohio, Nat'l Ass'n,* 214 F.3d 776 (6th Cir. 2000).